UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MYRNA D. CALLAHAN**                                             **CIVIL ACTION**

**VERSUS**                                                                     **NUMBER 07-745-RET-DLD**

**LIBERTY MUTUAL FIRE INSURANCE**
**COMPANY AND AUDUBON**
**INSURANCE COMPANY, INC.**

## MAGISTRATE JUDGE'S REPORT

This matter is before the court on a referral from the district court of Liberty Mutual's motion for summary judgment. (rec. doc. 44) The motion is opposed.

*Background*

Plaintiff purchased Homeowners Policy number H32-291-090192-605 0 (the policy) from defendant Liberty Mutual Fire Insurance Company to provide coverage to her property located at 24604 Pecan Place, Plaquemines, Louisiana. The term of the policy was January 25, 2005 to January 25, 2006, and provided for dwelling coverage in the amount of $124,200, other structure coverage in the amount of $12,420, replacement cost personal property coverage in the amount of $86,940, and loss of use coverage in the amount of $24,840. (rec. doc. 44-8, pg 2)

On September 1, 2005, plaintiff submitted a claim under the policy seeking compensation for wind damage to her roof, walls, and slab caused by Hurricane Katrina. On October 8, 2005, Liberty Mutual's adjuster inspected the property, found minimal damage to the roof and ceilings in two rooms, and damage to the detached garage caused by a fallen tree.

The adjuster prepared his inspection report on October 19, 2005, and on November 8, 2005, Liberty Mutual compensated plaintiff with $6,358.44 for covered damage to her

dwelling and other structures, along with $500 for food spoilage under the covered contents portion of her policy. On August 21, 2006, almost one year after filing the first proof of loss, plaintiff submitted a supplemental claim requesting compensation for roof repairs and more than 400 other items. Defendant re-inspected plaintiff's property, and issued a $9,435.53 supplemental payment on October 16, 2006. Defendant did not compensate plaintiff for the alleged slab damage and contents claim at this time. However, defendant hired an engineering firm, Rimkus Consulting Group, Inc. ("Rimkus") to inspect the slab for damage. On October 25, 2006, Rimkus issued a report which determined that plaintiff's slab was in good condition, and had not suffered any storm-related damage. Defendant thereafter denied plaintiff's claim for alleged slab damage.

As plaintiff's supplemental claim also included a request for compensation for personal property items, defendant attempted to arrange for an inspection of the items as there were issues with the supplemental claims. For example, documentary proof was lacking as to some of the items, and other items were duplicated entries. Between January 24, 2007, and October 29, 2007, defendant sent no less than eight (8) letters requesting an appointment to view the items. (rec. doc. 44-2, pg 4) In response to defendant's inquiries, on August 6, 2007, plaintiff explained in a letter that it was "waste of time" to set an appointment to view the contents unless the adjuster was "ready to pay" her fully for all damages. In this same letter, she advised defendant that she wanted $1.5 million in damages or she would file suit. (rec. doc. 44-2, Exhibit H)

On August 28, 2007, plaintiff filed the instant suit, alleging that Hurricane Katrina caused significant damage to her home, including damage to the roof, wall, and slab, and seeking benefits under the homeowners policy for the damages. After suit was filed, and

after numerous attempts to arrange a meeting, defendant met with plaintiff again on September 20, 2008, to review the contents portion of the supplemental claim. At that meeting, defendant advised plaintiff that in order to properly evaluate the claim, plaintiff needed to provide additional information regarding the age, value, and receipt for each of the claimed items. According to defendant, plaintiff refused to provide this information. (rec. doc. 44-2, Exhibit A) Defendant then estimated the actual cash value of each item covered under the policy, and issued another payment of $14,674.77 on October 7, 2008.

Following the issuance of this payment, on October 8, 2008, defendant then requested a status conference with the court in order to resolve the lawsuit. At this point, plaintiff had requested that defendant refrain from sending her "anything that requires a written response,"[1] and defendant believed that a status conference could address the issues involved in this case and the best means of addressing plaintiff's concerns. (rec. doc. 44-2, pg 6). The conference was held on November 20, 2008, and the parties agreed that defendant would prepare a spreadsheet of the items listed in the supplemental claim, which indicated whether or not the item was covered under the policy, and if so, the amount paid or to be paid for that item. Defendant agreed to provide the spreadsheet to plaintiff by December 5, 2008, so that plaintiff could review the spreadsheet and provide documentation and/or explanation for the items rejected by defendant. *Id.* Thereafter, a settlement conference was held by this court on March 4, 2009, whereupon the parties reviewed the spreadsheet. Defendant agreed to pay the replacement cost of each item for which plaintiff had documentation, and issued another payment in the amount of $1,509.70 for the recoverable depreciation. Defendant has received no further documentation as to

---

[1]Rec. doc. 44-12, Exhibit I - October 5, 2008, email from plaintiff to defendant.

the remaining items, and now files the instant motion as "there is no evidence to support any additional claims under the Policy." (rec. doc. 44-2, pg 8)

### ***GOVERNING LAW***

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with "specific facts" showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Ginsberg 1985 Real Estate Partnership v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir.1994).

In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir.1992). Rather, the non-moving party must come forward with competent evidence, such as affidavits or depositions, to buttress her claims. *Id.* Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987). While the court will "apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel,"[2] the "evidentiary requirements of summary judgment apply equally to *pro se* litigants as they

---

[2] *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam).

do to represented parties."[3] Thus, in the Fifth Circuit, *pro se* litigants may not oppose summary judgments by the use of unsworn materials. *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980).

Summary judgment must be entered against the non-moving party, on a properly supported motion, if the non-moving party fails to make an evidentiary showing in its opposition to the motion sufficient to establish the existence of an element essential to its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Thus, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., 475 U.S. at 588.*

### *Arguments of the Parties*

Plaintiff's lawsuit against defendant consists of two claims: 1) a coverage claim for wrongful denial of payment under the homeowner's policy; and 2) a bad faith claim for defendant's late or incomplete payments, and failure to arrange for convenient appointments.[4]

---

[3] *Jackson v. State Farm Fire & Casualty Co.,* 2010 WL 724108 (E.D. LA. February 22, 2010)

[4] Rec. doc. 1, exh. 1. Plaintiff also argues in her opposition that her telephone number is on the "Do Not Call" registry. She alleges that because defendant or its agents called her at home in connection with either her claim or her lawsuit, they violated the law and should be punished by the court. This argument is without merit and is therefore rejected by the court in its entirety.

*The Coverage Claim*

Defendant moves for summary judgment on plaintiff's coverage claims; in particular, plaintiff's claims that defendant failed to pay for all damages which were covered by the homeowner's policy. Defendant argues that it is plaintiff's burden to prove that the damages claimed in the suit are covered by the risk insured by the policy, which in this case is "windstorm," and she has not done so.  The coverage claim at issue herein may be separated into three parts: 1) claim for additional contractual damages; 2) claim for additional contents coverage; and 3) claim for additional living expenses.

Plaintiff did not oppose the motion for summary judgment with typical competent evidence such as a sworn affidavit or deposition testimony, but instead characterized her opposition as a "Voluntary Affidavit," and offered the "voluntary affidavit" as a means "to tell the truth the whole truth and nothing but the truth."[5]  In most circumstances, unsworn affidavits such as the opposition filed by plaintiff would be incompetent to raise a fact issue precluding summary judgment. *Roth v. Morgan,* 160 Fed. Appx. 409, 410 (5th Cir. 2005)*; Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir.1988).  However, 28 U.S.C. § 1746 provides an exception that permits unsworn declarations to substitute for an affiant's oath if the statement is made 'under penalty of perjury' and verified as 'true and correct.' ") (citing *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir.1988)).[6] Plaintiff's

---

[5]Rec. doc. 45, pg 1, paragraph 4.

[6]See 28 U.S.C. § 1746 ("Wherever, under any law of the United States or under any rule ... made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn ... affidavit, in writing of the person making the same ... such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration ... in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: (2) If executed within the United States, ... "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." (Signature)).

unsworn document purports to "tell the truth;" however, it is missing the requisite statement that the document was prepared "under the penalty of perjury." Generally speaking, this unsworn document therefore would not be considered competent evidence. However, courts have considered unsworn summary judgment evidence if later corrected by the parties. *See Morrgan v. The Neiman-Marcus Group, Inc./Neiman-Marcus Direct*, 2005 WL 3500314 (N.D. TX 2005); Hanes *v. Syms Corp.*, 1999 WL 305105, at *1 (N.D.TX 1999); *Racetrac Petroleum, Inc. v. J.J.'S Fast Stop, Inc.*, 2003 WL 251318, at *20 (N.D. TX 2003). Thus, this deficiency could be remedied by a supplemental affidavit containing the words "under penalty of perjury." Giving plaintiff the benefit of the doubt and assuming that she would correct the deficiency in a supplemental affidavit, the voluntary affidavit is otherwise in compliance with Rule 56(e),[7] as it is based, at least in part, on plaintiff's personal knowledge of the events in question, sets out facts that would be admissible in evidence, and shows that she is competent to testify on many of the matters stated. Thus, the court will take into consideration plaintiff's "voluntary affidavit" for purposes of the instant motion, contingent upon her later supplementing the affidavit should it be necessary.

**1. Additional contractual damages**

Beginning with the claim for additional contractual damages, defendant asserts that its payments under the dwelling and other structures section of the policy exceeded all estimates and claims of plaintiff other than two exceptions. One is a $7,000.00 estimate

---

[7] Federal Rule of Civil Procedure 56(e) governs the submission of affidavits in support of a motion for summary judgment. Rule 56(e)(1) applies to affidavits in general and provides in relevant part, "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56(e)(1). Rule 56(e)(2) governs responses to affidavits.

for termite damage,[8] damage not covered under the policy; and the other is a $23,250.00 estimate to install pilings under the dwelling's slab. As the structural engineer for Rimkus found no damage to the slab related to Hurricane Katrina, the estimate to install pilings also did not pertain to damage from that windstorm. (rec doc. 44-7, exhibit D, pg 1) While plaintiff sincerely believes that the estimate for $23,250.00 to install pilings is a "contrary report"[9] to the Rimkus report (rec. doc. 44-7), in reality, it is simply an estimate for repairs, not an expert report of the <u>cause</u> of any alleged damage to the slab.

Plaintiff also argues that estimates she submitted for $10,132.00 and $5,083.11 were ignored by defendant. Plaintiff states only that such estimates were for "the repairs to the back of our home,"[10] which is not sufficient to make a claim under the policy. In its reply, defendant explains that the $10,132.00 estimate was for replacement of the siding, but that, according to the Rimkus report, the siding damage (rot) was not due to high winds from Hurricane Katrina but instead was due to "long-term exposure to moisture." (rec. do. 44-7, pg 5). Plaintiff provided no evidence that the siding damage was caused by Hurricane Katrina, which would be necessary to trigger coverage under the policy. Defendant also explains that plaintiff's $5,083.11 estimate was for general repairs, and this estimate is less than the $13,272.98 for repairs which was paid under the dwelling coverage section of the policy. Plaintiff provided no evidence that the $5,083.11 was for repairs beyond that which already was paid under the terms of the policy.

---

[8] Plaintiff does not dispute the $7,000.00 estimate was for termite damage and therefore not covered under the policy.

[9] Rec. doc. 45, pg 4, paragraph 15.

[10] Rec. doc. 45, pg 4, paragraph 13.

Plaintiff next argues that she submitted an estimate for a shed for $3,870.00, but was paid only $3,050.40, and stated that defendant "changed the estimate" she submitted. (rec. doc. 45, pg 7, paragraph 26) In response, defendant states that it paid plaintiff the "full amount of a comparable replacement shed" and correctly points out that plaintiff provided no evidence that she actually purchased the $3,870.00 shed. Under the terms of the policy, defendant may pay either the replacement cost for a comparable shed or the "necessary amount actually spent to repair or replace" the shed.  (rec. doc. 44-8, exhibit E, pg 44, paragraph 3(b)(1)(b) and (c)) The court notes that plaintiff also did not provide any evidence that the $3,870.00 estimate was for a shed comparable to the one that was damaged in Katrina. Thus, defendant was under no obligation to pay plaintiff $3,870.00 as she failed to provide any proof that this estimate was for the replacement cost of a comparable shed, or that it was the amount she actually spent to repair or replace the damaged shed. Plaintiff therefore failed to provide specific material facts which would establish the existence of any genuine issue for trial regarding additional contractual damages.

### 2. The Additional Contents Claim

Defendant asserts that all of plaintiff's claims for personal property loss have been satisfied.  Defendant argues that when plaintiff provided the supplemental claim for 455 items,[11] it requested an inspection as allowed by the policy language, but plaintiff refused to allow the inspection, as indicated by plaintiff's letter of August 6, 2007,[12] until September

---

[11] Plaintiff argues that summary judgment should not be granted as defendant was aware that some of the 455 items were inadvertently duplicated by plaintiff when she prepared her list.  However, whether there are 400 or 455, or some other large number, is an inmmaterial fact.  The exact number of items is not a fact that creates a genuine issue for trial.

[12] Rec. doc. 44, Exhibit H.

20, 2008. Defendant contends that it asked plaintiff to provide additional information so that it could properly evaluate the supplemental claim, and when the information was not forthcoming, it estimated the value of the damaged contents covered under the policy and issued a check for $14,674.77, which represented the actual cash value of the personal property. (rec. doc. 44-2, pg 6) Plaintiff admits that she refused to look up the original purchase date, the age, and original receipt for many claimed items, but that she did so because it was "totally unreasonable" under the circumstances. (rec. doc. 45, page 5, paragraph 18) Plaintiff asserts that she had a "full replacement policy" and this information was "irrelevant" and constituted harassment on the part of defendant. *Id.* Plaintiff also contends that she did not have a chance to review each item on the spreadsheet provided by defendant at the settlement conference, and disputes that she received the actual cash value of "all" damaged contents. (rec. doc. 5, page 5, paragraph 19).

Plaintiff's policy reads, in pertinent part, as follows:

**SECTION I - CONDITIONS**

**2.    Your Duties After Loss**

. . .

    e.    Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

    f.    As often as we reasonably require:

        (1)    Show the damaged property;
        (2)    Provide us with records and documents we request and permit us to make copies; . . . .

(rec. doc. 44-8, pg 17)

**PERSONAL PROPERTY REPLACEMENT COST ENDORSEMENT**

>   a.   (1)   Personal Property: at replacement cost;
>
>   . . .
>
>   The named insured may choose not the replace some of the destroyed or stolen property. Settlement for the property not replaced will be on an actual cash value basis. . . .

(rec. doc. 44-8, pg 45)

Plaintiff does not dispute that defendant paid for all items submitted by plaintiff that were supported by the necessary documentation, or that she did not receive replacement cost for the supported items. Plaintiff also does not dispute that items which were damaged and not replaced would only be paid on an actual cash value basis. Instead, her only argument seems to be that payments she received were not the "total actual cash value" of all other items. However, she fails to point to any specific fact that indicates she was not paid in full for the damaged contents covered under the policy and supported by necessary documentation. Moreover, the one item she does mention is a storm door for which she submitted receipts but was not paid. (rec. doc. 45, pg 7, paragraph 27) However, plaintiff failed to provide any competent evidence that the storm door was damaged by Hurricane Katrina, which would have triggered coverage under the policy. Plaintiff therefore has presented no material facts which would establish the existence of any genuine issue for trial in this regard.

   3.   **Additional Living Expenses**

Defendant argues that plaintiff has presented no evidence that her home was uninhabitable or "not fit to live in." (rec. doc. 44-2, pg 14) Defendant states that plaintiff

-11-

returned to live in the home after Hurricane Katrina without performing any repairs to the home; thus any claim for additional living expenses must be dismissed.  Plaintiff fails to dispute this fact.  Thus, plaintiff failed to present any material facts which would establish the existence of any genuine issue for trial in this regard.

### *The Bad Faith Claim*

Plaintiff's complaint, along with her opposition to the motion to summary judgment, alleges bad faith on the part of defendant for its failure to pay claims timely, failure to pay claims properly, and attempts to contact her to set up inspections of the property while knowing that her telephone number was on the national "Do Not Call" registry."  Plaintiff further contends that defendant acted in bad faith when giving only two days to think about a settlement offer, and holding checks so that she was unable to "double our money. (Rec. doc. 45, pg 10 and 11)

In Louisiana, in order for plaintiff to prevail on this claim, she must show that she provided a satisfactory proof of loss, and that the insurer failed to pay the claim within the applicable statutory period either without probable cause or in an arbitrary and capricious manner.  La. R.S. §§ 22:1892, 22:1973(b)(5).  Similarly, La. R.S. § 22:1973 states that an insurer that breaches its "duty of good faith and fair dealing" to the insured shall be subject to statutory penalties. *See also, Meadowcrest Living Center L.L.C. v. Hanover Ins. Co.*, 2008 WL 2959707, at *4 (E.D. La. 2008).  Put another way, plaintiff must prove that the "insurer knowingly committed actions which were completely unjustified, without reasonable or probable cause or excuse." *Holt v. Aetna Cas. & Sur. Co.*, 680 So.2d 117, 130 (La.App. 2 Cir. 9/3/96).  The phrases "arbitrary and capricious" or "without probable (reasonable) cause," are synonymous with the word "vexatious." *Reed v. State Farm Mut. Auto. Ins. Co.*,

857 So.2d 1012, 2013 (La. 2003), *citing Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London,* 616 So.2d 1250, 1253 (La.1993). In *Louisiana Maintenance Services*, the Louisiana Supreme Court determined that "vexatious refusal to pay" means unjustified, without reasonable or probable cause or excuse. *Id.*, *citing* COUCH ON INSURANCE 2d, § 58:70.

These phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense. *Id.* A "good-faith" defense is one where the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. *Rudloff v. Louisiana Health Services and Indemnity Co.*, 385 So.2d 767, 771 (La.1980), *on rehearing*. Also, when there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist. *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So.2d 746, 752 (La. App. 2d Cir. 1999)  However, the insurer still needs to pay either the "undisputed portion" of the claim, or "the reasonable amount which is due," within the statutory time limits when there is a contested loss.  *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1091 (LA. 1985).) Under Louisiana law, this determination of whether the insurer acted in bad faith when negotiating and settling a claim depends on the facts and circumstances of each individual case. *See Roberie v. S. Farm Bureau Cas. Ins. Co.*,194 So.2d 713, 716 (La.1967); *Combetta v. Ordoyne*,  934 So.2d 836, 842-43 (La.App. 1 Cir. 5/5/06).

In this case, the competent evidence shows that the insurer diligently pursued the plaintiff in an attempt to settle all her claims, issuing several checks as more information became available from plaintiff, and did so expeditiously.  Defendant either paid the

"undisputed portion" of the claim or the "reasonable amount" (actual cash value) due on a timely basis, all the while continuing to negotiate with plaintiff.  There is no competent evidence which suggests that defendant improperly contacted plaintiff, or that the defendant "held" checks. The competent evidence further shows that plaintiff refused to allow inspections on a timely basis, insisted that she would not provide documentation for all claimed items, and demanded $1.5 million in damages.

Thus, there is no evidence that defendant acted in any arbitrary or capricious manner or without probable cause so as to trigger any statutory penalties. Plaintiff thus has failed to raise any material facts which would establish a genuine issue for trial on the basis of a bad faith claim.

## CONCLUSION

It is therefore the recommendation of the magistrate judge that defendant's motion for summary judgment be **GRANTED,** and plaintiff's claims be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on June 29, 2010.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MYRNA D. CALLAHAN**                               **CIVIL ACTION**

**VERSUS**                                          **NUMBER 07-745-RET-DLD**

**LIBERTY MUTUAL FIRE INSURANCE COMPANY AND AUDUBON INSURANCE COMPANY, INC.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 (fourteen) days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on June 29, 2010.

**MAGISTRATE JUDGE DOCIA L. DALBY**